IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRAGAN KAPLAREVIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 1729 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

In this Social Security appeal, plaintiff, Dragan Kaplarevic, has filed a motion seeking reversal and remand of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits (doc. # 9). The Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 18). For the reasons set forth below, we grant Mr. Kaplarevic's motion to remand and deny the Commissioner's motion to affirm.

I.

On December 14, 2012, Mr. Kaplarevic filed his application for benefits, alleging an onset date of August 1, 2012. His date last insured was December 31, 2014 (R. 13). The claim was denied initially and on reconsideration. Mr. Kaplarevic requested and received a hearing before an Administrative Law Judge ("ALJ"), and on August 13, 2014, the ALJ issued a written opinion denying him benefits (R. 11-21). The Appeals Council upheld the ALJ's determination,

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On March 30, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 7).

making it the final opinion of the Commissioner (R. 1-5). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

Mr. Kaplarevic presents only two grounds for remand: (1) that the ALJ improperly gave "too little weight to Mr. Kaplarevic's medical records at Union Health Services," which showed that Mr. Kaplarevic had degenerative disc disease and back pain with related functional limitations; and (2) that the ALJ erred in ignoring the hearing testimony of the vocational expert ("VE") that Mr. Kaplarevic would not be able to work if he was off task 30 percent of the time, because his back pain would keep him off task at least that often (doc. # 9: Pl.'s Mot. at 3-4). Because Mr. Kaplarevic contests only the ALJ's determination with regard to his back impairment, we limit our review to the facts related to that issue.

Mr. Kaplarevic received medical treatment primarily from physicians at Union Health Services ("Union"). At his March 14, 2013 physical, Mr. Kaplarevic complained of left sciatica pain, pain when standing up or sitting down, tenderness in the lower lumbar area and back pain (R. 521-22). His straight leg raise test was positive bilaterally,[3] and the doctor diagnosed him with "low back syndrome" (R. 522-23).[4] In this and most other doctors' reports in the record, Mr. Kaplarevic was described as obese and weight loss was recommended (R. 523).

On March 26, 2013, Debbie Weiss, M.D., performed an internal medicine consultative examination on Mr. Kaplarevic for the Bureau of Disability Determination Services ("DDS"). Mr. Kaplarevic told Dr. Weiss that he had pain radiating from his low back to his right foot which reached a level of 10 out of 10 and made it difficult for him to sit or stand for more than

---

[3] In the straight leg raise test, the patient lies on his back and the doctor lifts the affected leg while the knee stays straight. If the patient feels pain down his leg, the test is "positive," and may be evidence of a herniated disk. *See* http://orthoinfo.aaos.org/PDFs/A00534.pdf; https://medlineplus.gov/ency/article/000442.htm.

[4] This condition is not specifically defined in the record.

2

10 to 15 minutes or do household chores that involved bending (R. 484). Massage therapy and hydrocodone helped alleviate his pain (*Id.*). Dr. Weiss observed that Mr. Kaplarevic had decreased range of motion of the lumbosacral spine and positive straight leg raising bilaterally due to pain, but no limitation in the range of motion of any upper or lower extremity (R. 485-87). She further noted that Mr. Kaplarevic walked with a slight limp, bearing most of his weight on the right lower extremity, and he had pain and spasm in his left ankle and decreased sensation in both lower extremities to mid-shin (R. 485-86). He could not balance on one leg, but Mr. Kaplarevic had no difficulty getting on and off the examination table, heel and toe walking, and doing the tandem gait (*Id.*). An x-ray of Mr. Kaplarevic's lumbar spine ordered the next day by DDS revealed degenerative disc disease at L4-L5 and L5-S1 levels (R. 490).

On May 15, 2013, Mr. Kaplarevic reported "episodic back pain, pain into his legs, [and] calf pain" to a Union physician; an examination revealed that Mr. Kaplarevic had a slow gait, moderately diminished range of motion of the lumbosacral spine in all directions and positive straight leg raising (R. 720). The physician opined that Mr. Kaplarevic had a herniated disc or lumbar spinal stenosis and significant degenerative disc disease (*Id.*). The doctor noted that Mr. Kaplarevic was "not a big complainer" and "has had no real treatment," and prescribed physical therapy (*Id.*). Physical therapy helped alleviate Mr. Kaplarevic's back pain, but he still had back pain and tenderness and positive straight leg raising tests in July 2013 (R. 508-10). In August 2013, Mr. Kaplarevic asked for and received a referral for additional physical therapy (R. 712).

At the hearing on June 30, 2014, Mr. Kaplarevic testified that he suffered from severe pain in his back, ankle and calf, which made it hard for him to get dressed and put his socks on (R. 37). His doctor prescribed pain medication, but he did not take it for fear of addiction (R. 37-38). Mr. Kaplarevic explained that he was sitting sideways at the hearing to take pressure off his

3

back (R. 45). He could stand up to 15 minutes, but needed to move about to keep the pressure off his back (*Id.*).

The ALJ presented a hypothetical to the VE of an individual who could perform light work, needed to alternate between sitting and standing for one to two minutes approximately every 30 minutes, could frequently balance, kneel and crouch, could frequently or occasionally climb ramps and stairs,[5] could occasionally stoop and crawl; and needed to avoid concentrated exposure to environmental and other hazards, including unprotected heights, moving machinery and night driving (R. 47-49). The VE testified that the individual could not perform Mr. Kaplarevic's past relevant work in construction or as a mechanic, but other jobs would be available (R. 48-49). However, if the individual needed to recline 80 percent of the work day, or would be off-task up to one-third of the work day, no jobs would be available (R. 49-50).

### III.

On August 13, 2014, the ALJ issued a written opinion following the familiar five-step process for determining disability, 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ stated that Mr. Kaplarevic has not engaged in substantial gainful activity since August 1, 2012, his alleged onset date (R. 13). At Step 2, the ALJ concluded that Mr. Kaplarevic had severe impairments which included degenerative disc disease and obesity.[6] At Step 3, the ALJ found that Mr. Kaplarevic's impairments, singly or in combination, did not meet or exceed a listed impairment, including Listings 1.02 and 1.04 for degenerative disc disease (R. 14-15). In addition, the ALJ stated that Mr. Kaplarevic's obesity did not significantly impair any of his other functions (R. 15).

---

[5]The transcript from the hearing indicates that the ALJ stated that the hypothetical individual could frequently climb ramps and stairs as well as occasionally climb ramps and stairs (R. 47).

[6]Other severe impairments included a history of asthma, eye surgery, and angioplasty with stent placement (R. 13). The ALJ found that Mr. Kaplarevic had non-severe diabetes, depression and anxiety (R. 13-14). Because Mr. Kaplarevic does not contest the ALJ's findings with regard to these impairments, we do not address them here.

4

The ALJ determined that Mr. Kaplarevic retained the RFC to perform light work (R. 15). The ALJ wrote both that Mr. Kaplarevic "frequently can climb ramps and stairs," and that he "cannot climb ladders, ropes or stairs" (*Id.*). In addition, the ALJ stated that Mr. Kaplarevic could frequently balance, kneel, and crouch and occasionally stoop and crawl; and should avoid concentrated exposure to extreme heat, humidity, vibration, dust fumes, odors, gases, poor ventilation, unprotected heights, dangerous moving machinery, and night driving (R. 15-16). Moreover, the ALJ found that Mr. Kaplarevic could "sit or stand for at least 30 minutes at a time, but would need to change positions for a brief one to two minute stretch break before returning to the original position" (R. 16).

The ALJ noted that objective medical examinations and imaging showed that Mr. Kaplarevic had degenerative disc disease, osteoarthritis, moderate right neural foraminal narrowing, thoracic spine firmness and swelling, moderately decreased lumbar range of motion, pain and tenderness in his lower lumbar spine, positive bilateral straight leg raising tests, a slight limp favoring the right leg, decreased sensation in both lower extremities, a slow gait, reduced left ankle strength and tenderness over his right ankle (R. 17-18). In addition, the ALJ reviewed the March 2013 consultative medical examination and Mr. Kaplarevic's visits to the doctor in May, July and August 2013, at which Mr. Kaplarevic reported that he experienced episodic back pain that radiated into his legs and calves and had problems bending (*Id.*).

Nevertheless, the ALJ found that Mr. Kaplarevic's "symptoms are not as severe as the claimant alleges" and "not supported by the medical evidence of record," because records showed that he could exercise regularly, walk for up to 45 minutes, and bathe without trouble (R. 16-17). The ALJ wrote that at Mr. Kaparevic's May 2013 doctor's visit, "the *only* evidence of a problem was a slow gait and moderately diminished range of motion," and in July 2013, the

"*only* abnormal findings on exam were obesity, tenderness in lower lumbar spine, and a positive, bilateral straight leg raising test, all of which were assessed as *only* low back syndrome" (R. 18, emphasis added).

Furthermore, despite noting that Mr. Kaplarevic's doctor referred him to physical therapy and prescribed medication for back pain, the ALJ stated that Mr. Kaplarevic "received no real treatment" for his back and leg pain (R. 18). Instead, the ALJ reasoned that physical therapy and Mr. Kaplarevic's request for prescription refills "suggest[ed] the claimant's capacity for more activity and for rehabilitation" and "underscore[d] the claimant's capacity for physical work" (*Id.*). In addition, the ALJ noted that Mr. Kaplarevic had no problems sitting through the 30 minute hearing on June 2014, though the ALJ observed that he walked with a slight limp (R. 18). The ALJ also found it "notabl[e]" that none of Mr. Kaplarevic's physicians had found him unable to work (R. 19). The ALJ stated that she gave "some weight to the state agency opinions," though the ALJ added "an ability to change positions, based upon complaints of difficulty with prolonged positional tolerances" (R. 18-19).[7]

At Step 4, the ALJ found that Mr. Kaplarevic could not perform his past relevant work, and at Step 5, relying on the VE's testimony at the hearing, the ALJ determined that Mr. Kaplarevic could perform jobs that exist in significant numbers in the national economy (R. 19-20). Accordingly, the ALJ concluded that Mr. Kaplarevic was not disabled (R. 21).

### IV.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a

---

[7] While the ALJ refers to state agency opinions in the plural, the ALJ does not mention any state agency physician other than Dr. Weiss, who did not provide an RFC opinion. There does not appear to be other state agency opinions in the record.

reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Mr. Kaplarevic first contends that the ALJ erred by giving too little weight to his medical records from Union, which showed that he had degenerative disc disease and back pain with related functional limitations (Pl.'s Mot. at 3). We agree that the ALJ erred in this regard.[8]

"An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). However, that is what the ALJ did in this case when she concluded that: (a) Mr. Kaplarevic "received no real treatment" for his back and leg pain, despite his repeated visits to the doctor, a referral to physical therapy, and prescribed medication for back pain (R. 18); (b) the severity of Mr. Kaplarevic's impairments was "not supported by the medical evidence of record," despite evidence of degenerative disc disease, osteoarthritis, moderately diminished range of motion, pain, swelling and tenderness in his spine, and positive bilateral straight leg raising tests (R. 17-18); and (c) Mr. Kaplarevic's ability to exercise, walk, and participate in physical therapy "underscore[d] the claimant's capacity for physical work," despite his doctor's opinion that Mr. Kaplarevic had a herniated disc or lumbar spinal stenosis and significant degenerative disc

---

[8]Regarding Mr. Kaplarevic's second argument -- that the ALJ erred in omitting the VE's testimony that an individual who is off-task 30 percent of the time cannot maintain full-time employment -- we note that an ALJ must only incorporate into the RFC "the claimant's limitations [that are] supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Plaintiff's cursory argument does not explain what evidence of record the ALJ overlooked that would provide support for such severe limitations. Therefore, plaintiff has not shown that the ALJ erred in her consideration of the VE testimony.

disease that would benefit from physical therapy (R. 720). The ALJ's decision to play down Mr. Kaplarevic's objective medical evidence rather than factor it into her opinion amounts to "cherry picking the medical record—which is improper." *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (reversing and remanding the ALJ's decision where the ALJ minimized or ignored abnormal findings in a physician's report and erroneously determined certain physician reports were inconsistent that were not).[9]

Moreover, in cherry picking the medical record, the ALJ improperly played doctor. "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). With no medical expert guidance, the ALJ minimized the significance of Mr. Kaplarevic's abnormal examination results and his physician's diagnosis of low back syndrome. The ALJ stated that she gave "some weight to the state agency opinions" in rendering her opinion, but the ALJ points to no "state agency opinion" in the record: only the results of Dr. Weiss's examination. Indeed, it is unclear upon what the ALJ relied in determining Mr. Kaplarevic's RFC. Instead, it appears that the ALJ's conclusion was based on her own interpretation of the medical evidence, which is improper. *See Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (holding that the ALJ improperly played doctor when he arrived at his own mistaken understanding of the medical evidence that led him to conclude the claimant's examination was "essentially normal"); *see also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (holding that the

---

[9]In addition to failing to grapple with this evidence, the ALJ put undue weight on the absence of any medical opinion finding Mr. Kaplarevic too disabled to work. Contrary to the ALJ's opinion, this absence was not "notabl[e]" (R. 19). The ultimate question of disability is reserved to the Commissioner, and the absence of a physician opinion on the ultimate question of disability -- where there has been no request that any physician give such an opinion -- is not evidence of the lack of disability. *See, e.g., Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) (citing 20 C.F.R. § 416.927(e)(2)).

ALJ's conclusion, which was not supported by medical evidence in the record, amounted to improperly playing doctor).[10]

## CONCLUSION

Therefore, for the reasons stated above, we grant Mr. Kaplarevic's motion to remand (doc. # 9) and deny the Commissioner's motion to affirm (doc. # 18). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

Sidney I. Schenkier
United States Magistrate Judge

Dated: March 7, 2017

---

[10] In cherry picking the record, the ALJ also failed to consider the effect that Mr. Kaplarevic's severe impairment of obesity may have had on his back pain and related limitations. The ALJ is required to consider how a claimant's obesity could affect his leg (or back) pain and, by extension, his ability to work. *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014). Here, however, the ALJ did not consider any connection between Mr. Kaplarevic's obesity and his back pain.